**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:07CV361-3-MU**
**3:03CR218-MU**

CHRISTOPHER REGINALD HINES,     )
)
                               Petitioner,   )
Vs.                       )          **ORDER**
)
UNITED STATED OF AMERICA,     )
)
                             Respondent.  )

      **THIS MATTER** comes before the Court on the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1); Petitioner's Amended Document (Doc. No. 5); Petitioner's Motion for Summary Judgment (Doc. No. 6); the Government's Motion for Summary Judgment (Doc. No. 18);Petitioner's Motion for Partial Summary Judgment (Doc. No. 21); Petitioner's Response to the Government's Motion for Summary Judgment (Doc. No. 23); the Government's Response (Doc. No. 50); Petitioner's Motion for Discovery (Doc. No. 24); the Government's Response to Petitioner's Motion for Partial Summary Judgment (Doc. No. 35); Petitioner's Motion to Correct Clerical Error Under F.R.Cr. P. 36 or F.R.Civ. P. 60;[1] (Doc. No. 38); Petitioner's Motion to Expedite (Doc. No. 41); Petitioner's Motion to Strike (Doc. No. 51); Petitioner's Motion for Summary Judgment (Doc.

---

[1] Petitioner's motion alleges two clerical errors in the Court's Amended Judgment: (1) that the conspiracy as alleged in Count One of the Superseding Indictment ended on "9/2001" and not on "9/2003" as stated in the Amended Judgment and (2) the Court sentenced the defendant to sixty (60) months confinement on Count One of the Superseding Indictment and not six (6) as stated in the Amended Judgment. The Government does not oppose this motion. (Doc. No. 56.)

1

No. 53); and Petitioner's Motion that the Government Concede (Doc. No. 54)

## I. FACTUAL AND PROCEDURAL HISTORY

A review of the record reveals that on December 16, 2003 Petitioner was charged in a twelve-count Bill of Indictment arising from an extensive mortgage fraud and money laundering scheme. A Superseding Bill of Indictment was subsequently returned and filed on July 27, 2004. A Second Superseding Bill of Indictment was returned and filed on August 23, 2004, wherein Petitioner was charged in Count One with conspiracy to commit various federal offenses, including the making of false statements and application in relation to a loan, mail fraud, wire fraud, and bank fraud; and in Count Eleven with conspiracy to launder money. The Second Superseding Bill of Indictment further listed several aggravating factors, including the amount of loss foreseeable to Petitioner (approximately $7 million), the number of victims (between 10 and 50), the fact that Petitioner's offenses were committed by sophisticated means, the amount of gross receipts derived by Petitioner from federally-insured financial institutions (more than $1 million), and the fact that Petitioner was the leader and organizer of extensive criminal activity involving five or more participants.

On September 8, 2004 Petitioner filed a written plea agreement in which he pled guilty to Counts One and Eleven of the Second Superseding Indictment. In his plea agreement, Petitioner specifically stipulated that a factual basis existed to support his guilty plea to both Counts. In addition, Petitioner and his counsel executed, under oath, a factual stipulation in which Petitioner admitted, in pertinent part, that he knew material misrepresentations were made on real estate closing statements from which his company received proceeds and that said proceeds were used to facilitate additional financial transactions in furtherance of the charged conspiracy.

Petitioner appeared in court on September 8, 2004 for a Plea and Rule 11 Hearing before

Magistrate Judge Horn. During the hearing, Judge Horn specifically described the elements of the offenses to which Petitioner was pleading guilty, Government counsel summarized the substance of the counts and the potential penalties and Petitioner affirmed that he understood the charges against him and the possible penalties. (Rule 11 Hearing Transcript at 4-9, 13-15, 19.) Government counsel also read Petitioner's factual stipulation, after which a correction was made and Petitioner acknowledged that it was a true statement. (Id. at 10.) Government counsel also recited the more significant terms of the plea agreement, including that Petitioner was waiving his right to appeal and to challenge his conviction or sentence in a post-conviction proceeding, except with respect to allegations of ineffective assistance of counsel or prosecutorial misconduct. (Id. at 17-18.) Petitioner affirmed that the Government had correctly stated the terms of the plea agreement. (Id. at 19.) Petitioner also affirmed that he was satisfied with the services of his attorney and Magistrate Judge Horn accepted the plea. (Id. at 20-22.)

On or about February 17, 2005, the United States Probation Office published its Presentence Report (PSR) which substantially adopted the stipulations in the plea agreement. However, on March 1, 2005, Petitioner sought to discharge his counsel, Mr. Deke Falls, based on irreconcilable differences regarding Petitioner's desire to withdraw his guilty pleas. An inquiry as to the status of counsel was heard by Magistrate Judge Horn, during which Mr. Falls was permitted to withdraw from the case and substitute counsel was appointed.

On March 22, 2005, Petitioner's new counsel, Andrew Murray, filed Petitioner's Motion to Withdraw Guilty Pleas alleging, in part, that Petitioner "has always maintained his innocence" and that he entered his guilty pleas only because his first appointed counsel was unprepared for trial. On April 21, 2005, Magistrate Judge Horn held a hearing on Petitioner's Motion to Withdraw his guilty

3

pleas. During that hearing and despite his prior sworn statements in the Rule 11 Hearing and filed factual stipulation, Petitioner asserted that he had maintained his innocence and that he acquiesced to pleading guilty under stress and the belief that his attorney was not adequately prepared to represent him at trial. (Plea Withdrawal Hearing Transcript at 2-3.) In response, Government counsel noted that he and the case agents met with Petitioner and his counsel prior to the Rule 11 Hearing to review the plea agreement. At the meeting, Government counsel specifically asked Petitioner if he understood the plea agreement and stated that he could only enter guilty pleas if he was, in fact, guilty of the offenses. (Id. at 4-5.) On April 22, 2005, Magistrate Judge Horn issued a Memorandum and Order denying Petitioner's Motion to Withdraw Guilty Pleas. (Case No. 3:03cr218, Doc. No. 84.) The Memorandum and Order cited as its basis Petitioner's testimony under oath during the Rule 11 Hearing, his written admission of guilt, and the fact that Petitioner offered little or no evidentiary support for his claim of ineffective assistance of counsel. Judge Horn further noted that sending the case to trial would result in substantial prejudice to the Government, inconvenience to the Court and a waste of judicial resources.

Petitioner objected to Judge Horn's Memorandum and Order and on August 23, 2005 the undersigned held a de novo hearing on Petitioner's Motion to Withdraw his Guilty Pleas. Petitioner and Mr. Falls testified during the hearing. At the conclusion of the hearing, this Court denied Petitioner's motion to withdraw, finding that Petitioner's testimony was not credible, his counsel was competent and setting a new trial in the case would be prejudicial to the Government and place a substantial burden on judicial resources. (Plea Withdrawal Hearing Transcript at 68-70.) More specifically, the undersigned found that Petitioner had not provided credible evidence that his plea was not knowing or voluntary or that he had a claim of legal innocence. (Id. at 68.)

4

On September 23, 2005, the United States Probation Office completed a revised PSR calculating Petitioner's base offense level as 28 for Counts One and Eleven. The Probation Officer also recommended an increase of two levels for his violation of 18 U.S.C. § 1956 and an increase of four levels for Petitioner's role as an organizer and leader in the offenses. The Probation Officer also recommended that the Court deny Petitioner any credit for acceptance of responsibility and increase his sentence by two levels based on Petitioner's testimony in the Motion to Withdraw Hearing repudiating his prior sworn statements in the Rule 11 Hearing and filed factual stipulation. The revised PSR recommended a total offense level of 36, yielding a Sentencing Guidelines range of imprisonment of 188 to 235 months based on criminal history category I. Petitioner objected to the revised PSR and reasserted his innocence.

On September 28, 2005 this Court held a sentencing hearing at which the undersigned found that Petitioner knowingly and voluntarily entered his guilty plea with an understanding of the charges, possible penalties and consequences. (Sentencing Hearing Transcript at 6.) The Court overruled Petitioner's PSR objections and found that a two-level increase for obstruction of justice was appropriate. (Id. at 15.) The Court accepted the PSR as its factual basis for Petitioner's guilty pleas and found, based on an offense level of 36 and a criminal history category I, that Petitioner was subject to a Guidelines imprisonment range for Count One of 60 months and for Count Eleven of 188 to 235 months. The Court sentenced Petitioner to 60 month imprisonment on Count One and 188 months imprisonment on Count Eleven to run concurrently. (Id. at 17.)

Petitioner filed a notice of appeal on September 28, 2005. On April 2, 2007, the Fourth Circuit Court of Appeals affirmed Petitioner's conviction and sentence, holding that the district court did not abuse its discretion in denying Petitioner's motion to withdraw his guilty plea and in finding

an adequate factual basis to support the plea. <u>United States v. Hines</u>, 227 F. App'x 256, 257-58 (4th Cir. 2007). On August 27, 2007 Petitioner filed the instant Motion to Vacate alleging that both counsel in the district court, Deke Falls and Andrew Murray, were ineffective. In particular, Petitioner alleged that Mr. Falls failed to investigate the case and required that Petitioner pore through boxes of files provided by the Federal Bureau, requesting the files Petitioner thought might be needed for trial. Petitioner asserts that Mr. Falls was not prepared for trial and that he only pled guilty as a result of the lack of preparedness on the part of Mr. Falls. Petitioner asserts that when he expressed concern about the amount of loss for which he would be held responsible under the plea agreement, Mr. Falls responded that he should not be concerned about this figure because the Court had the discretion to sentence Petitioner based on an investigation into the facts and in accordance with the Sentencing Guidelines. Petitioner contends that he was held responsible for estimated losses, rather than actual loss and otherwise sentenced in contravention to the Guidelines.

Petitioner also alleges that his subsequent counsel, Andrew Murray, provided ineffective assistance of counsel by failing to investigate Petitioner's assertions with respect to the plea withdrawal hearing. Specifically, Petitioner asserts that Mr. Falls committed perjury during the plea withdrawal hearing and that Mr. Murray failed to argue that perjury to the Court or investigate the truth of Mr. Falls' assertions. Petitioner also claims that Mr. Murray failed to argue effectively for his legal innocence; failed to question Mr. Falls as to when Petitioner first requested that he move to withdraw Petitioner's guilty plea; failed to compare Mr. Falls' statements set forth in Petitioner's motion for a continuance with his later testimony at the plea withdrawal hearing; failed to establish Mr. Falls' ineffectiveness, resulting in a four-level increase in Petitioner's offense level; and failed to argue that the Government had breached the plea agreement insofar as the agreement provided that

the Court would determine the loss amount, while Mr. Murray stipulated to the amount of loss to which Petitioner agreed in pleading guilty. Petitioner also alleges that Mr. Murray was ineffective on appeal for failing to challenge his sentence as unreasonable.

Petitioner also alleges that he is actually innocent as to the charges of money laundering and conspiracy, asserting that the stipulations he signed as part of the plea agreement were not true, particularly the stipulation that he was aware that false information regarding the source of down payments was contained in the HUD-1 settlement statements.

Petitioner alleges prosecutorial misconduct, alleging that Government counsel falsely assured him that he would be sentenced in accordance with the United States Sentencing Guidelines and that his stipulations as to loss amount were only to serve as recommendations to the district court and were not binding. Petitioner also alleges that Government counsel breached the plea agreement by failing to move for a downward departure where his co-defendants received downward departures and he was "just as deserving of a downward departure motion as they were." (Motion to Vacate at 37.) Petitioner further asserts that Government counsel was vindictive when he sought enhancements and a loss amount for sentencing purposes that he knew had no basis in fact and in threatening to prosecute Petitioner for crimes associated with a company with which Petitioner had no dealings.

Finally, Petitioner contends that counsel should have challenged the application of the 2002 edition of the Guidelines based on a violation of the Ex Post Facto Clause of the United States Constitution.

In response to Petitioner's motion, the Government obtained an affidavit from Mr. Falls in which Mr. Falls states that in an effort to defend Petitioner effectively, he requested and received

funding to retain an investigator who interviewed potential witnesses, the names of whom were provided by Petitioner or through Mr. Falls' review of discovery. (Falls Aff., attached to Respondent's Motion for Summary Judgment.) According to Mr. Falls, after consulting with the investigator following her interviews, he determined that they would not be helpful witnesses for the Defendant. (Id.) Mr. Falls stated that he reviewed every relevant witness statement provided in discovery, and nearly every potential witness implicated Petitioner as a central figure in the mortgage fraud. (Id.) With respect to Petitioner's decision to plead guilty, Mr. Falls noted that the witness about whom he was most concerned was a former topless dancer who would testify to performing for Petitioner while his wife was at work and his children at school and while Petitioner smoked crack cocaine. (Id.) The Government did not, according to Mr. Falls, initially intend to use this witness but later learned that the witness had also committed mortgage fraud at Petitioner's direction, resulting in the decision to use the witness and to have her explain how she came to know Petitioner. (Id.) Mr. Falls informed Petitioner of this development, as well as of the fact that there were no witnesses, other than Petitioner himself, who would testify that Petitioner was not involved in the fraud, though there might be witnesses who were personally unaware that he was involved in the fraud. (Id.) Mr. Falls states in his affidavit that he spent nearly all of his time working on Petitioner's case as the trial approached and was in contact with Petitioner nearly daily, if not more frequently. Mr. Falls states further that he subpoenaed witnesses at Petitioner's direction and did not release those witnesses until after Petitioner decided to plead guilty. (Id.) According to Mr. Falls, Petitioner never expressed concern that Mr. Falls was unprepared for trial. Finally, Mr. Falls states that after pleading guilty, Petitioner attempted to provide assistance to the Government by giving names of other individuals whom he knew were also involved in mortgage fraud. (Id.)

## II. <u>ANALYSIS</u>

### A. Ineffective Assistance of Counsel

Petitioner cites a laundry list of reasons that, from his point of view, establish that his attorney was ineffective.   With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby.   <u>Strickland v. Washington</u>, 466 U.S. 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. Of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); and <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31.  If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong."  <u>Fields</u>, 956 F.2d at 1290, <u>citing</u>, <u>Strickland</u>, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different.  <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999).  Rather, the Court "can only grant relief under ... <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364 U.S. 364, 369 (1993).

Critically, because some of Petitioner's claims are attempting to challenge issues at sentencing, in order to demonstrate an entitlement to relief on those, he must, at a minimum, allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999). As to Petitioner's claims regarding pre-sentencing issues, the Court will use the appropriate standard for establishing prejudice in the plea context. In that instance, a petitioner must show that his counsel's performance was deficient and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Fields, 956 F.2d at 1297 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985) (internal citations and quotations omitted).

In evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath affirming satisfaction with counsel are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Moreover, statements made during Rule 11 proceedings constitute strong evidence of the voluntariness of a defendant's plea. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991).

A presumption exists that counsel is competent. A defendant seeking post-conviction relief bears a heavy burden to overcome this presumption. And the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir. 1983). Indeed, the defendant bears an even heavier burden where, as here, the claim of ineffective assistance of counsel follows the entry of a guilty plea.

### a. Mr. Falls

Petitioner claims that Mr. Falls was ineffective for a variety of reasons. Specifically,

Petitioner alleges that Mr. Falls failed to investigate the case and required that Petitioner pore through boxes of files provided by the Federal Bureau, requesting the files Petitioner thought might be needed for trial.[2] Petitioner asserts that Mr. Falls was not prepared for trial and that he only pled guilty as a result of the lack of preparedness on the part of Mr. Falls.[3] Petitioner asserts that when he expressed concern about the amount of loss for which he would be held responsible under the plea agreement, Mr. Falls responded that he should not be concerned about this figure because the Court had the discretion to sentence Petitioner based on an investigation into the facts and in accordance with the Sentencing Guidelines. Petitioner contends that he was held responsible for estimated losses, rather than actual loss and otherwise sentenced in contravention to the Guidelines

Contrary to Petitioner's allegation, Mr. Falls states in his affidavit that he hired an investigator to assist in his investigation into the charges against Petitioner related to mortgage fraud, that his investigator interviewed all witnesses identified by Petitioner or by Mr. Falls as a result of his review of the discovery, and that he evaluated the statements by these witnesses for their value to Petitioner's defense. Mr. Falls ultimately concluded that the only witness available to testify that Petitioner did not participate in the charged mortgage fraud was the Petitioner himself.

This Court has already concluded that Mr. Falls provided "close assistance of counsel" on the record at the conclusion of Petitioner's hearing on his motion to withdraw his plea. (Transcript

---

[2] The Court is not concerned with the fact that Petitioner assisted counsel in reviewing discovery. This is common practice in a sophisticated fraud case such as this as it is often the Defendant who is most familiar with the business documents. The fact that counsel relied upon the Defendant to "pore through boxes of files" does not amount to ineffective assistance of counsel.

[3] As an example of Mr. Falls' failure to investigate the case, Petitioner contends that there were five witnesses who would have testified that they had no knowledge of Petitioner's involvement in fraud.

at 69.)  During that hearing, the evidence established that Mr. Falls met with Petitioner 8 - 12 times between January 8, 2004 and March 2005, and attended at least one and perhaps two meetings at which Petitioner, Mr. Falls, Government counsel and agents were in attendance; that Mr. Falls was in constant e-mail contact with his client and Government counsel in the weeks leading up to the trial date; that Mr. Falls requested and was granted the assistance of a private investigator; and that Mr. Falls testified that he was ready to go to trial (Transcript at 23,24,25, 50, 57,61, 64).  The allegations in the instant motion regarding Mr. Falls' ineffective assistance are the very same as  those raised in the context of his motion to withdraw his guilty plea.  As this Court has already specifically concluded, after hearing testimony, Mr. Falls provided Petitioner with close assistance of counsel, and Petitioner has provided no additional evidence in this motion which establishes that Mr. Falls was ineffective.  Therefore, the Court finds that Petitioner has not established that his counsel, Mr. Falls, provided ineffective assistance of counsel and has not met his burden under the <u>Strickland</u> test.[4]

### b. Mr. Murray

Next, Petitioner contends that Mr. Murray, the attorney who was appointed to represent him after Mr. Falls withdrew from the case, was also ineffective.  Petitioner alleges that

---

[4] Petitioner also argues that Mr. Falls was ineffective for failing to file a motion to suppress the testimony of Ms. Frankie Hemphill.  The Supreme Court explained in <u>Tollett v. Henderson</u>, 411 U.S. 258 (1973), that "a guilty plea represents a break in the chain of events which has preceded the criminal process."  As a result, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  <u>Id</u>.  However, a guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the plea.  <u>Fields</u> at 1296.  Here, Petitioner does not contest the voluntariness of his plea.  Therefore, Petitioner's claim is waived pursuant to <u>Tollett</u>.

Mr. Murray provided ineffective assistance of counsel by failing to investigate Petitioner's assertions with respect to the plea withdrawal hearing. Specifically, Petitioner asserts that Mr. Falls committed perjury during the plea withdrawal hearing and that Mr. Murray failed to argue that perjury to the Court or investigate the truth of Mr. Falls' assertions. Petitioner also claims that Mr. Murray failed to argue effectively for his legal innocence; failed to question Mr. Falls as to when Petitioner first requested that he move to withdraw Petitioner's guilty plea; failed to compare Mr. Falls' statements set forth in Petitioner's motion for a continuance with his later testimony at the plea withdrawal hearing; failed to establish Mr. Falls' ineffectiveness, resulting in a four-level increase in Petitioner's offense level; and failed to argue that the Government had breached the plea agreement insofar as the agreement provided that the Court would determine the loss amount, while Mr. Murray stipulated to the amount of loss to which Petitioner agreed in pleading guilty. Petitioner also alleges that Mr. Murray was ineffective on appeal for failing to challenge his sentence as unreasonable.

First the Court notes that Petitioner provides no evidence in support of his allegations. However, this Court has reviewed the transcript of Petitioner's motion to withdraw his guilty plea which took place before the undersigned on August 23, 2005 and finds no support for Petitioner's allegations against Mr. Murray with respect to his claims that Mr. Murray was deficient regarding his representation at that hearing. Indeed, the record establishes that Mr. Murray began his presentation to the Court on August 23, 2005 by explaining to the Court that he counseled his client of the possible ramifications, at sentencing, of trying to withdraw his guilty plea. (Transcript at 4.) Mr. Murray then proceeded with the hearing at which Petitioner testified extensively regarding Mr. Falls' representation of him. Mr. Murray questioned Petitioner about the events which led him to decide to enter into a plea agreement with the Government and also those that led to his decision to

seek to withdraw his plea. (Transcript at 4 - 22). Mr. Murray specifically questioned Petitioner about the timing of his decision to withdraw his plea and when he communicated his desire to withdraw his plea to Mr. Falls. (Id. at 17 -19). Next, Mr. Murray called Mr. Falls as a witness and extensively questioned Mr. Falls regarding his relationship with Petitioner and when he became aware of Petitioner's desire to withdraw his plea. (Id. at 49 - 60). At the conclusion of the evidence, Mr. Murray vehemently argued that his clients' motion should be granted succinctly summarizing the evidence for the Court that Petitioner only agreed to plead guilty because he felt Mr. Falls was not prepared to proceed to trial. Specifically, Mr. Murray argued that Mr. Falls did not "put enough time into the documents," "did not know the documents well enough," "had not had enough communication with [Petitioner] to make him feel comfortable," that "the proper witnesses had not been interviewed" and that "there were not proper subpoenas out." (Id. at 67). Mr. Murray argued that Petitioner immediately told Mr. Falls that he felt forced into entering the plea and that he wanted to withdraw his plea. (Id.) Finally, Mr. Murray argued that Petitioner "always asserted his innocence." (Id. at 66.) This Court finds that Mr. Murray was not deficient in his representation of Petitioner with regards to the motion to withdraw. Quite the contrary, Mr. Murray vigorously argued on his client's behalf that Petitioner be permitted to withdraw his guilty plea.

Petitioner has not established that his counsel was deficient in his representation of Petitioner with respect to the motion to withdraw. He has not established either prong of the Strickland test and therefore his claims regarding Mr. Murray's representation of him with respect to the motion to withdraw are dismissed.

## I. Ineffectiveness at Sentencing

Petitioner contends that Mr. Murray was ineffective for failing to argue that the Government

had breached the plea agreement insofar as the agreement provided that the Court would determine the loss amount, while Mr. Murray stipulated to the amount of loss to which Petitioner agreed in pleading guilty.  Petitioner also contends that Mr. Murray's representation was deficient because he had admittedly not reviewed the entirety of discovery prior to the sentencing hearing, focusing, instead on the attempt to secure the withdrawal of Petitioner's guilty plea.   A review of the plea agreement, which Petitioner entered into prior to Mr. Murray's representation, reveals that Petitioner's sentence wold be determined by the sentencing judge.  (Plea Agreement ¶ 4.)  The agreement also reveals that Petitioner stipulated as follows: The amount of loss attributable to offenses known to the government and reasonably foreseeable to the defendant at the time his cooperation began was more than $2.5 million and less than $7 million.   See U.S.S.G. § 2B1.1(b)(1)(J).  The defendant understands that "loss" under 2§B1.1may be different from, greater, or lesser than "restitution" under 18 U.S.C. § 3556."  (Plea Agreement ¶ 5c.)  At the Sentencing Hearing, Government counsel offered to provide a factual basis, through the testimony of the case agent, for how the loss was calculated and noted that the parties did stipulate in the plea agreement that the loss was more than $2.5 million and less than $7 million.  (Sentencing Transcript 11-12.)

The record also establishes that Mr. Murray made an argument that the loss amount was "escalated."  (Plea Agreement at 7.)   In response, Government counsel noted the stipulation regarding loss in the plea agreement and at the same time offered to put on evidence through his case agent as to how the loss was calculated.  In response, the Court sentenced Petitioner consistent with the stipulation on the loss in the plea agreement.

Petitioner has not established that his counsel's performance at sentencing was deficient. Indeed, Mr. Murray voiced his objection to the loss amounts, Government counsel responded and

the Court sentenced Petitioner.  The Court finds Mr. Murray was not ineffective for failing to argue that the Government had breached the plea agreement with respect to the loss amount.  There was no breach of the agreement and this claim is dismissed.

### ii. Ineffectiveness on Appeal

Petitioner contends that his counsel, Andrew Murray, was ineffective on appeal for failing to challenge his sentence as unreasonable.  Petitioner was sentenced within the applicable Guidelines range of imprisonment.  The Fourth Circuit has specifically held that a sentence within the applicable Guidelines range of imprisonment is entitled to a presumption of reasonableness.  United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006) ("A sentence that falls within the properly calculated advisory guideline range is entitled to a rebuttable presumption of reasonableness.").  The Supreme Court has upheld this appellate presumption.  Rita v. United States, 127 S. Ct. 2456, 2462 (2007). Petitioner has asserted no credible argument in favor of a finding of unreasonableness, and there is no reasonable probability that the outcome of the appeal would have differed had Mr. Murray made such an argument.

### c. Ex Post Facto Claim

Petitioner claims that both Mr. Falls and Mr. Murray were ineffective for failing to advise him that the 2002 edition of the Guidelines were less favorable to him than the 2000 edition which is the edition which corresponds to the time period of the conspiracy alleged in the Indictment.  In support of his argument, Petitioner cites to language in the plea agreement which states that "[s]ince the offenses charged in the Second Superseding Indictment (and misconduct relevant to that offense) occurred before November 5, 2003, and the Guidelines in effect at the time of the charge [sic] offense are more favorable to the defendant, the offense level in the defendant's case should be

determined by the Guidelines effective November 1, 2002." (Plea Agreement at 2.) The language was apparently inserted into the plea agreement because the Sentencing Guidelines § 2B1.1 was amended effective November 1, 2003 to provide for an increased base offense level for certain offenses. Therefore, the plan was to ensure that rather than using the Guidelines in effect at the time of Petitioner's sentencing, the pre-amendment Guidelines would be used. (Doc. No. 50 at 3-4.)

Petitioner was sentenced under the 2002 Guidelines, which calculations began with § 2S1.1 providing that when a defendant is convicted of money laundering under 18 U.S.C. § 1956(h), the court is to use the base offense level for the underlying offense from which the laundered funds were derived, using the most serious underlying offense in the case of multiple underlying offenses. **See U.S.S.G. §§ 2S1.1(a)(1) and 2S1.1 cmt. n. 2(A)(2002).** Therefore the Probation Officer determined that the guideline for bank fraud, found in § 2B1.1 was the appropriate guideline. Under § 2B1.1 the base offense level was determined to be 6. Eighteen levels were added based on the stipulated loss amount of between $2.5 and 7 million. Two levels were added based on the identification of between 10 and 50 victims and two levels were added due to Petitioner's receipt of more than $1 million dollars, resulting in a base offense level of 28 for the money laundering conspiracy. In addition, the Probation Officer recommended a two-level enhancement under § 2S.1.(b)(2)(B) because the offense involved a violation of 18 U.S.C. § 1956, a four-level enhancement because Petitioner was a leader of the offense pursuant to § 3B1.1(a) and a two-level enhancement because Petitioner obstructed the sentencing proceeding by making false and conflicting statements to the Court, yielding a total offense level of 36. Petitioner was sentenced to 188 months, which is the low end of a Guideline range of 188 - 235 months.

The Government contends that under the 2000 Guidelines, application of the money

laundering guidelines set forth in § 2S1.1 would have generated a base offense level of 23. See U.S.S.G. § 2S1.1(a)(1) (2000).[5] Subsection (b)(2) then provides for enhancements based on "the value of the funds" involved in the money laundering offense. While the "value of the funds" is not defined in the guideline, courts, in applying this guideline, have considered the total amount of the funds it believed was involved in the course of the criminal conduct. United States v. Barrios, 993 F.2d 1522, 1524 (11th Cir. 1993); see also United States v. Johnson, 971 F.2d 562, 575 (10th Cir. 1992). However, in this case, Petitioner stipulated that the loss to the victims was between $2.5 and 7 million and the indictment charged him with having caused a foreseeable loss of approximately $7 million. The amount of funds involved in the course of Petitioner's criminal conduct, then, was up to $7 million based on Petitioner's stipulations, which corresponds to an eight-level enhancement under § 2S1.1(b)(2)(I). In addition, Petitioner was subject to a four-level enhancement for his role as leader of the money laundering conspiracy and a two-level obstruction of justice enhancement, yielding a total offense level of 37, one level higher than that generated through the application of the 2002 edition of the Guidelines. Because the 2000 edition of the Sentencing Guidelines does not result in an offense level or corresponding Guidelines range of imprisonment lower than that resulting from an application of the 2002 edition of the Guidelines, Petitioner cannot establish that his counsel was deficient for failing to argue in favor of the application of the 2000 edition of the Guidelines or that he was prejudiced.

**B. Prosecutorial Misconduct**

Petitioner alleges prosecutorial misconduct, claiming that Government counsel falsely

---

[5] The Court notes that the substantive offense to which Petitioner pled was a money laundering offense in violation of 18 U.S.C. § 1956(a)(1)(A)(I). See Second Superseding Bill of Indictment ¶ 23. (Case No. 3:03cr218, Doc. No. 52.)

assured him that he would be sentenced in accordance with the United States Sentencing Guidelines and that his stipulations as to loss amount were only to serve as recommendations to the district court and were not binding. Petitioner also alleges that Government counsel breached the plea agreement by failing to move for a downward departure where his co-defendants received downward departures and he was "just as deserving of a downward departure motion as they were." (Motion to Vacate at 37.) Petitioner further asserts that Government counsel was vindictive when he sought enhancements and a loss amount for sentencing purposes that he knew had no basis in fact and in threatening to prosecute Petitioner for crimes associated with a company with which Petitioner had no dealings.

First, Petitioner's alleges that Government counsel breached his promise to Petitioner by arguing in favor of the loss and receipt amounts to which Petitioner stipulated in the plea agreement, because arguing those amounts violated the terms of the Sentencing Guidelines. Petitioner cites to § 2B1.2(c) of the Sentencing Guidelines, which provides that a stipulation that establishes the commission of additional offenses shall be treated as if the defendant had been convicted of counts charging such offense. However, in this case, the stipulations did not concern separate offense, but rather, certain characteristics of the offense relevant to sentencing. Therefore, § 2B1.2 is not applicable. Moreover, Government counsel's conduct in arguing in favor of findings in accord with Petitioner's stipulations of fact is not inconsistent with that provision of the agreement, but is an implicit acknowledgment that the decision, was ultimately the Court's.

Next, Petitioner contends that the Government breached the plea agreement by failing to file a motion for a downward departure, a claim premised solely on Petitioner's assertion that both of his co-defendant received such motion. However, Petitioner's plea agreement makes clear that such

a motion would only be made if "[t]he defendant . . . provide[s] truthful information about the subject charges and about any other criminal activity within the defendant's knowledge to any government agent or agency that the United States designates." (Doc. 17-2, Ex. to Govt's Mot. For Summary Judgment at 7.) In this case, Petitioner pled guilty, but then sought to withdraw his plea and certainly did not acknowledge his criminal responsibility sufficient to warrant a downward departure. Moreover, the plea agreement makes clear that the decision to make a downward departure motion rests entirely with the Government. (Id. at 9.)

Petitioner asserts that Government counsel engaged in misconduct in arguing for offense-level enhancements based on loss and receipts that counsel knew could not be supported by evidence. In the instant case, Petitioner stipulated that the loss amounts and receipts amount argued by the Government were accurate. (Id. at 2.)

Petitioner also argues that the Government violated the Plea Agreement by arguing in favor of an obstruction of justice enhancement. However, nothing in the Plea Agreement precludes the Government from seeking an obstruction of justice enhancement based on Petitioner's post-plea conduct in committing perjury at the plea withdrawal hearing. Moreover, Mr. Murray affirmed in his affidavit that he advised Petitioner of the risks of testifying because of that very concern. Petitioner has not established any basis for his claims of prosecutorial misconduct.

**C. Actual Innocence Claim and Claim that Conviction is Invalid**

Finally, Petitioner contends that he is actually innocent of the conspiracy charge because his factual stipulation that he was aware that false information was contained in the HUD-1 Settlement Statements was untrue. Petitioner also claims that his conviction for money laundering is invalid because it was premised on gross proceeds rather than net proceeds.

First, the law governing habeas jurisprudence "makes clear that an allegation of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera v. Collins, 506 U.S. 390, 404 (1993). See also United States v. Brooks, 2008 WL 2783162m slip op. At 3 (W.D. Va July 17, 2008) (citing Herrera) Harvey v. Horan, 285 F.3d 298, 299 (4th Cir. 2002) (citing Herrera); and Royal v. Taylor, 188 F.3d 239, 243 (4th Cir. 1999) (citing Herrera). To the extent that Petitioner is attempting to secure a new sentence on the basis of his allegation of "actual innocence," his efforts must be flatly rejected because his allegation does not set forth a cognizable claim for relief.

Next, to the extent that Petitioner is not alleging a true "actual innocence claim" as that legal term of art is understood but is instead challenging his guilty plea by alleging that he lied or misled the Court when he stipulated that he was aware that the false information contained in the HUD-1 Settlement was untrue, Petitioner waived any such a claim pursuant to his Plea Agreement.[6] Indeed, in his Plea Agreement, Petitioner specifically waived his right to challenge, during a post-conviction proceeding, either his conviction or sentence, except on the basis of ineffective assistance of counsel, prosecutorial misconduct, or the sentence on the basis of grounds not argued in this motion.

At his Rule 11 hearing, Petitioner swore under oath[7] that, among other things, he understood that he was waiving his right to challenge his sentence or conviction in a post-conviction proceeding.

---

[6] This is also true with respect to his claim that his conviction for money laundering is invalid because it was premised on gross proceeds, rather than net proceeds.

[7] In accordance with the law, this Court has placed great weight on the Petitioner's representations at her Rule 11 Hearing. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (representations made by a defendant at a plea hearing, as well as any findings made by the judge, constitute a formidable barrier in any subsequent collateral proceeding).

(Rule 11 Hearing transcript at 19.)

The Fourth Circuit has expanded the general rule concerning appeal waivers to hold that a defendant may waive in a plea agreement his rights under § 2255 to attack his conviction and sentence collaterally. United States v. Lemaster, 403 F.3d 216 (4th Cir. 2005). Consequently this Court concludes that the Agreement's waiver provision is valid and fully enforceable, and that it stands as an absolute bar to the Petitioner's attempts to challenge his conviction and sentence on the above cited grounds.[8]

Moreover, in connection with this same allegation at his hearing on his motion to withdraw his plea, this Court has already specifically determined that Petitioner had not provided any credible evidence that his plea was not knowing or voluntary or that he had a claim of legal innocence. (Plea Withdrawal Hearing Transcript at 68-70.) The Fourth Circuit affirmed this Court's decision. United States v. Hines, 227 Fed. App'x 256, 257-58 (4th Cir. 2007). Petitioner has not provided any further evidence regarding this claim. Further, at sentencing, this Court found the Government's obstruction enhancement appropriate and revoked acceptance of responsibility based on Petitioner's perjury regarding the stipulation he signed indicating that he knew there was false information in the HUD-1 Settlement Statement. Therefore, for the reasons stated herein, this claim is dismissed

### III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate (Document No. 1) is **DENIED,** the Government's Motion for Summary Judgment is **GRANTED** (Document No. 18). **IT IS FURTHER ORDERED** that Petitioner's Motion to Correct Clerical

---

[8] Moreover, Petitioner did not attempt to raise these issues on appeal. See United States v. Mikalajunas, 186 F.3d 490, 492093 (4th Cir. 1999); United States v. Frady, 456 U.S. 152 (1982); Bousley v. United States, 523 U.S. 614, 621 (1998).

Error (Doc. No. 38) is **GRANTED.**  The Clerk is directed to prepare an amended judgment only to correct the following two clerical errors: 1) the date offense concluded with respect to Count One should read 9/2001 and not 9/2003  and 2) Petitioner was sentenced on Count One to 60 months and not 6 months.

**IT IS FURTHER ORDERED that the following motions are denied as moot:**

Petitioner's Motions for Summary Judgment (Doc Nos. 6, 21 and 53);
Petitioner's Motion for Discovery (Doc. No. 24);
Petitioner's Motion to Expedite (Doc. No. 4);
Petitioner's Motion to Strike (Doc. No. 51);
Petitioner's Motion that the Government Concede (Doc. No. 54).

**SO ORDERED**.

Signed: October 1, 2009

Graham C. Mullen
United States District Judge